IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JULIA O. SULLIVAN,        *

                        *

    Plaintiff,        *

                        *

vs.                 *   CIVIL ACTION 08-00596-B

                        *

MICHAEL J. ASTRUE,      *

Commissioner of        *

Social Security,       *

                        *

    Defendant.        *

## ORDER

Plaintiff Julia O. Sullivan ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. On September 16, 2009, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 15).  Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73.  (Doc. 16).  Oral argument was held on September 16, 2009. Upon careful consideration of the administrative record, the oral arguments and the parties' briefs, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

## I.   Procedural History

Plaintiff filed applications for a period of disability and

disability insurance benefits on September 1, 2005, alleging that she has been disabled since August 1, 2005, due to depression, fatigue, panic disorder, and high blood pressure. (Tr. 49-51, 72). Plaintiff's application was denied initially, and she filed a timely Request for Hearing before an Administrative Law Judge (hereinafter "ALJ"). (Tr. 32-33, 39). On August 28, 2007, ALJ Ricardo M. Ryan ("ALJ Ryan") held an administrative hearing which was attended by Plaintiff, her representative and vocational expert (hereinafter "VE") Doug Miller. (Tr. 247-280). On April 7, 2008, the ALJ entered an unfavorable decision finding that Plaintiff is not disabled. (Tr. 14-26). Thereafter, the Appeals Council ("AC") denied Plaintiff's request for review on September 11, 2008; thus, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. (Tr. 5-7). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  **Issues on Appeal**

A.  Whether the ALJ erred in finding that Plaintiff could return to her past relevant work and in failing to fully explain his decision.

B.  Whether the ALJ erred by failing to perform a function-by-function analysis of Plaintiff's limitations in assessing her RFC in exertional terms.

C.  Whether the ALJ erred by failing to consider the impact of Plaintiff's morbid obesity on her residual functional capacity.

D.   Whether the ALJ erred in failing to assign controlling weight, or any weight, to the opinion of Plaintiff's treating physician, Dr. Charla Evans, M.D.

E.   Whether the ALJ erred by finding that Plaintiff's hypertension, cervical arthritis, obesity and edema are not severe impairments.

## III. <u>Factual Background</u>

Plaintiff was born on January 14, 1964, and was 43 years old at the time of the administrative hearing.  (Tr. 49, 69, 250). Plaintiff reported that she left high school in the 9th grade, that she received her GED, and that she received an associate's degree in office administration from Bishop State.  (Tr. 76, 252-253). She has past work experience as a utility worker for the county schools.  (Tr. 78, 91, 254-258).  Plaintiff testified that in this classification, she worked as a bus driver, an office helper, a bus inspector helper, a mechanic helper and as a janitor. (Tr. 254, 255-257).

According to Plaintiff,  she became disabled and stopped working in August 2005, when she passed out on the bus and did not know where she was. Plaintiff also testified that she cannot work due to swelling in her feet and legs, panic and anxiety attacks, and depression.  (Tr. 258, 260).  Plaintiff also testified that some days, she spends all day in bed, that she had been suicidal six months before the hearing, and that she had started seeing Dr.

Hammond, a psychiatrist, on an as needed basis. (Tr. 262-263, 266). According to Plaintiff, she lives with her son who has a seizure disorder and learning disabilities, and she is able to take care of her personal needs and cook. (Tr. 258, 265-266). Plaintiff also testified that her mom and sister assist her with household functions. Plaintiff further testified that she goes out with her boyfriend to the mall, to dinner or fishing. (Tr. 265-266). Plaintiff further testified that she has problems with concentration and remembering things. (Tr. 268). However, she also testified that she is able to read the newspaper and the Bible, and that she is capable of writing a letter, paying her bills, managing her money and balancing her checkbook. (Tr. 253-254).

IV.  **Analysis**

    A.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court may not decide the facts anew, reweigh the evidence, or substitute

---

[1] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792
F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of
fact must be affirmed if they are based upon substantial evidence.
<u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth</u>
<u>v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding that
substantial evidence is defined as "more than a scintilla but less
than a preponderance" and consists of "such relevant evidence as a
reasonable person would accept as adequate to support a
conclusion[]").   In determining whether substantial evidence
exists, a court must view the record as a whole, taking into
account evidence favorable as well as unfavorable to the
Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th
Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. Lexis 10163 (S.D. Ala.
June 14, 1999).

**B.   <u>Discussion</u>**

An individual who applies for Social Security disability
benefits must prove his disability.  20 C.F.R. §§ 404.1512,
416.912.  Disability is defined as the "inability to do any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than twelve months." 42 U.S.C. §§
423(d)(1)(A), 404.1505(a), 416.905(a).  The Social Security
regulations provide a five-step sequential evaluation process for

determining if a claimant has proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[2]

In case sub judice, the ALJ determined that Plaintiff met the nondisability requirements for a period of disability and disability insurance benefits and was insured for benefits through December 31, 2009.  (Tr. 19).  The ALJ concluded that Plaintiff has not engaged in substantial gainful activity since August 1, 2005, her alleged disability onset date.  Id.  The ALJ determined that while Plaintiff has the severe impairments of panic disorder without agoraphobia and

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

6

depressive disorder NOS, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.  Id.   The ALJ concluded that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform semiskilled work over a wide range of exertional levels, and that contact with the general public should not be a usual job duty.  (Tr. 21).  He also found that she was able to return to her past relevant work as a utility worker, except that she could not return to her job as a school bus driver. (Tr. 26).

The relevant evidence[3] reveals that Plaintiff underwent nerve conduction tests on April 8, 2004, 15 months before her alleged onset date, which were normal.  (Tr. 203-204).  An MRI of her cervical spine on the same day showed mild degenerative disc disease.  (Tr. 205).

As best the Court can discern, Plaintiff was treated by Charla Evans, M.D., in 2005 and 2006[4]. Dr. Evans completed a "Continuing Disability Claim Form dated August 1, 2005.  On the form, Dr. Evans

---

[3]While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date, only that evidence which is relevant to the issues before the Court is included in the summary.

[4]Approximately 15 pages of treatment notes from Dr. Evans are included in the record; however, the notes are undated. Thus, it is not clear if there records relate to treatment received during the relevant time period. (Tr. 163-166, 168-169, 172-181).

lists Plaintiff's primary disabling conditions as major depression, causing fatigue, poor concentration and emotional lability[5], and opines that Plaintiff should not drive. Dr. Evans further opines that Plaintiff's prognosis is fair, and that her condition should significantly improve in three to four months. (Tr. 116). Dr. Evans also completed a Sick Leave Certification dated August 19, 2005, in which she diagnoses Plaintiff with major depression and panic disorder, and opines that these impairments are probably of lifelong duration. She recommends that Plaintiff not drive a school bus. (Tr. 118).

Plaintiff was seen by Dr. Evans on December 30, 2005, and reported nausea. She was diagnosed with hypertension, panic disorder, anxiety, major depression, irritable bowel syndrome ("IBS"), and osteoarthritis in her neck. (Tr. 161-162). During an April 14, 2006 visit, Plaintiff was diagnosed with low back pain, chronic anxiety, major depression, panic disorder, IBS, recurrent follulitis, and gastroesophageal reflux disorder. (Tr. 159-160). Plaintiff was next seen by Dr. Evans on June 28, 2006, and was diagnosed with major depression, panic disorder, upper respiratory infection, bronchitis, gastroesophageal reflux disorder and obesity. (Tr. 157-158). In treatment notes dated August 7, 2006,

---

[5]On a Mental Residual Functional Capacity Questionnaire completed on August 11, 2006, Dr. Evans states that she is not a psychiatrist. (Tr. 184-185).

Dr. Evans notes that Plaintiff complained of a sore on the back of her leg.  She was diagnosed with cellulitis - left leg, upper respiratory infection, and major depression/anxiety. (Tr. 155-156). During an August 11, 2006 follow-up visit, Plaintiff was diagnosed with spider bite.  (Tr. 153-154).

Dr. Evans completed a Physical Capacities Evaluation on August 11, 2006.  In one place in the evaluation, Dr. Evans opines that Plaintiff cannot sit/stand/walk at all and that she must frequently elevate her feet when sitting; in another place in the evaluation, she opines that Plaintiff can sit a total of two hours and stand/walk for a total of one hour in an eight-hour workday, and that she must frequently elevate her feet/legs when seated. According to Dr. Evans, Plaintiff can lift up to 10 pounds for two hours of the day, can lift up to 25 pounds for one hour during the day, and cannot lift more than 25 pounds.  She found that Plaintiff has no limitation on simple grasping or pushing/pulling with arm controls, but she is unable to do fine manipulation.  Dr. Evans also opines that Plaintiff cannot use her legs and feet for repetitive action, that she can bend and reach for one hour, and that she cannot squat, crawl or climb at all.  Dr. Evans further opines that Plaintiff is totally restricted from activities at unprotected heights, around moving machinery and involving driving automotive equipment, and that Plaintiff is moderately limited in activities while exposed to marked changes in temperature and humidity, and

while exposed to dust, fumes and gases.  Dr. Evans  opines that Plaintiff has been impaired for two years, and that she is unable to work an eight-hour day, 40 hours per week on a sustained basis without missing more than two days of work per month.  (Tr. 183).

Dr. Evans also completed a Mental Residual Functional Capacity Questionnaire dated August 11, 2006; however, she noted that she is not a psychiatrist.  Dr. Evans opines that Plaintiff has a marked limitation on her ability to respond appropriately to customary work pressures and to complete work-related activities in a normal workday or workweek.  She further opines that Plaintiff is moderately limited in her ability to respond appropriately to supervision and co-workers, and to perform simple and repetitive tasks.  According to Dr. Evans, Plaintiff has had these limitations for 12 months, or is expected to have them for 12 months.  Dr. Evans also noted that Plaintiff's medication makes her sedated and dizzy. (Tr. 184-185).

In a letter dated November 13, 2007, Dr. Evans opines that Plaintiff is medically disabled due to major depression and panic disorder.  She further notes that Plaintiff "is also treated for high blood pressure and edema, but her debilitating diagnoses are the former." (Tr. 224, 231).

Plaintiff underwent a mental evaluation by Lucile T. Williams,

Psy.D. on October 28, 2005[6]. Plaintiff reported her daily activities as lying in bed most of day, watching television, reading, cleaning the house, cooking, washing clothes, preparing homework for her internet college classes, and grocery shopping. Dr. Williams diagnoses Plaintiff with panic disorder without agoraphobia and depressive disorder, NOS. Dr. Williams opines that Plaintiff is likely to have a favorable response to treatment in six to twelve months with treatment including psychotherapy. (Tr. 126-129).

Ellen Eno, Ph.D. completed a Mental Residual Functional Capacity Assessment on November 1, 2005. Dr. Eno concluded that Plaintiff is moderately limited in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; and to interact appropriately with the general public. She also found that Plaintiff is not significantly limited in her ability to remember locations and work-like procedures; to understand, remember and carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to make simple work-related

---

[6]Plaintiff had breast reduction surgery on October 17, 2005. (Tr. 119-125).

decisions; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Dr. Eno also found that Plaintiff is not significantly limited in any area of social interaction other that the ability to interact appropriately with the general public as stated above, and is not significantly limited in any area of adaptation.  (Tr. 130-133).

Dr. Eno completed a Psychiatric Review Technique on November 1, 2005.  She opined that Plaintiff is moderately limited in her ability to maintain social functioning and in her ability to maintain concentration, persistence or pace, and is mildly limited in her activities of daily living.  (Tr. 144).

Travis Rutland, M.D., completed a physical examination of Plaintiff on November 19, 2005.  Her listed medications are Diovan, Lortab[7], Cymbalta, and Alprazolam[8].  On physical exam, she was mildly obese, ambulating briskly, and getting on and off the examination table without an assistive device. (Tr. 149-150).  Her straight leg raising was negative bilaterally, and she had 5/5

---

[7]Lortab is a narcotic pain reliever, used to relieve moderate to severe pain.  See, www.drugs.com.  Last visited September 4, 2009.

[8]Alprazolam is a benzodiazepines, used to treat anxiety disorders. See, www.drugs.com.  Last visited September 4, 2009.

strength bilaterally in the upper and lower extremities in all major muscle groups. Plaintiff's sensory exam was normal, and her reflexes were 2+ and symmetric in bilateral upper and lower extremities. Dr. Rutland diagnosed Plaintiff with anxiety and depression, hypertension and arthritis of her cervical spine. He noted that the majority of Plaintiff's limitations appeared to be psychiatric. (Tr. 148-152).

Treatment notes from Northside Clinic reflected that Plaintiff was treated three times during the October/November 2006 period. Plaintiff reported low back pain, sinus, cough, constipation, head and chest congestion, depression and urinary tract infection. She was diagnosed with low back pain, major depression, obesity, hypertension, bronchitis, upper respiratory infection, obesity and disability with panic attacks and urinary tract infection. Plaintiff was prescribed medication and referred to Dr. Hammond. (Tr. 207-212)

Donald Newman, M.D., completed a form completed for the Retirement Systems of Alabama ("RSA") dated November 29, 2006. He diagnosed Plaintiff with panic disorder, anxiety, and major depression. He opined that Plaintiff's condition is permanent, and that exacerbations of her condition are unpredictable. He restricted Plaintiff  from driving children, and recommended that she have a position that does not require driving school children. (Tr. 189-190).

Plaintiff was evaluated by psychiatrist Marilynn Hammond, M.D., LLC on December 4, 2006.  Dr. Hammond lists her current medications as Xanax, Cymbalta, Wellbutrin, Amoxicillin[9], Codeine syrup, Diovan, Potassium, and Zelnorm[10].   On mental exam, Plaintiff's insight was and judgment were poor.  She was alert and oriented times three, she had low or below average IQ, her memory was intact and she was deemed a low risk of danger to herself or others.  (Tr. 194-195). In assessing Plaintiff, Dr. Hammond reported that she last treated Plaintiff in 2003 and at that time, Plaintiff had done well on Serzone and Celexa[11], had done well in therapy and was coping well. Dr. Hammond opined that Plaintiff had not done as well since she stopped therapy and changed medications.  She further opined that Plaintiff has  very limited  coping  abilities  and very  limited cognitive  abilities.   She  diagnosed  Plaintiff  with  moderate, recurrent, major depression and borderline IQ, prescribed Celexa and Trazodone, and referred her to Dr. Lucile Williams for individual psychotherapy.  (Tr. 195).

Plaintiff was next seen by Dr. Hammond on December 21, 2006.

---

[9]Amoxicillin is an antibiotic, used to treat many different types of infections caused by bacteria.  See, www.drugs.com. Last visited September 4, 2009).

[10]Zelnorm is used to treat irritable bowel syndrome marked by constipation.  It was withdrawn from the U.S. market in 2007. See, www.drugs.com.  Last visited September 4, 2009).

[11]Celexa is an antidepressant, used to treat depression. See, www.drugs.com.  Last visited September 4, 2009).

Dr. Hammond observed that Plaintiff was very dramatic and very interested in getting disability. (Tr. 192).

Also included in the record are treatment notes of Karen Jimenez, M.D. Plaintiff presented to Dr. Jimenez on January 25, 2007, complaining of dizziness, sinus infection and night sweats. Her physical exam was within normal limits. She was diagnosed with post surgical menopause, hypertension, sinusitis and history of ovarian cyst, and was prescribed Decadron[12], Medrol[13] and Entex[14]. (Tr. 218-219). Plaintiff returned to Dr. Jimenez on February 13, 2007, complaining of dizziness, depression, lightheadedness, epigastric discomfort, nausea, jerking legs, depression, and not leaving home much. Dr. Jimenez noted that Plaintiff was well-dressed with makeup, a change from the prior visit. Her physical exam was normal except for an ulcer on her tongue, with no cyanosis or edema. She was diagnosed with depression, dizziness and restless legs syndrome. (Tr 217).

Dr. Hammond completed a Mental Residual Functional Capacity Questionnaire dated August 6, 2007. She opined that Plaintiff had

_____

[12]Decadron is a corticosteroid drug, used to reduce inflammation. See, www.drugs.com. Last visited September 4, 2009.

[13]Medrol is a corticosteroid drug, used to reduce inflammation. See, www.drugs.com. Last visited September 4, 2009.

[14]Entex is an expectorant, used to help loosen congestion in the chest and throat. See, www.drugs.com. Last visited September 4, 2009.

no restriction of activities of daily living and no difficulty in maintaining social functioning. She estimated that Plaintiff would seldom have deficiencies of concentration, persistence or pace that result in failure to complete tasks in a timely and appropriate manner. She further opined that Plaintiff could be expected to experience one or two episodes of decompensation in work or work-like settings, causing Plaintiff to withdraw or experience exacerbation of signs and symptoms for a period lasting at least two weeks. Dr. Hammond opined that Plaintiff is markedly limited in her ability to respond appropriately to customary work pressures, moderately limited in her ability to complete work related activities in a normal workday or workweek, in that she complains of swelling in her legs, and is mildly limited in her ability to respond appropriately to co-workers. She notes that these limitations have not lasted 12 months, and would not be expected to last 12 months, that the earliest date these limitations occurred was January 2001, and that the possible side effect of her medication was weight gain. Dr. Hammond noted that Plaintiff's limitations may have more to do with obesity, cognitive ability, and self confidence, as Plaintiff told her that she cannot drive a school bus anymore, and that she refuses to do jobs such as cooking because she now has a college degree and is not able to stand on her feet. (Tr. 222-223).

Plaintiff was evaluated by C.E. Smith, M.D., LLC on November

16

12, 2007.  In his November 26, 2007 report, Dr. Smith stated that on mental exam, Plaintiff was alert and in good contact, and that she presented complaints with intensity, spoke with good articulation and was fairly well spoken.  He noted that her speech was a little pressured and circumstantial with regard to somatic complaints.  She was relevant and coherent, and euthymic with good range of appropriate affect.  Cognitively she cooperated well, performed well, and gave the impression of normal intelligence and no organicity.  She was well-oriented, with intact memory, and good fund of information, and had facility with simple calculations, and uniformly abstract interpretations of proverbs.  (Tr. 225-227).

Dr. Smith completed a Medical Source Opinion, in which he opined that Plaintiff was mildly limited in her ability to use judgment in detailed or complex work-related decision; to deal with changes in a routine work setting; to understand, remember, and carry out detailed or complex instructions; and to maintain attention, concentration or pace for periods of at least two hours. He further opined that Plaintiff was not limited in her ability to respond appropriately to supervision, co-workers, customers or other members of the general public; to understand, remember, and carry out simple, one and two-step instructions; or to maintain social functioning and activities of daily living.  (Tr. 228-229).

In treatment notes dated March 8, 2007, Dr. Hammond diagnosed Plaintiff with major depression, panic disorder with agoraphobia,

borderline IQ, obesity, hypertension, and status post hysterectomy and breast reduction, and assigned a GAF of 40[15].   Dr. Hammond observed that Plaintiff had no insight, poor judgment, and okay concentration and memory.  She also noted that Plaintiff has no job, no activity, sleeps all day and is gaining weight dangerously.  She opined that Plaintiff needed a job or regular activity because she clearly did better when working.  Accordingly, she recommended that Plaintiff get a job, not stay home in bed, and that she see a therapist. (Tr. 237).

During a May 24, 2007 visit, Dr. Hammond's diagnosis was unchanged. Plaintiff was assigned a GAF of 50[16]. Plaintiff reported that she was doing better. (Tr. 236).  Plaintiff's next visit was on August 6, 2007.  Her diagnosis was unchanged.  Plaintiff reported that she was doing okay, but she did not feel she could work.  (Tr. 235).  In treatment notes dated October 3, 2007, Plaintiff's concentration was good and her memory was intact.  Her insight was poor and judgment was limited.   Plaintiff reported that she was

---

[15]The Global Assessment of Functioning (hereinafter "GAF") is a numeric scale used to rate the social, occupational and psychological functioning of adults.  A GAF of 31-40 indicates some impairment in reality testing or communication, or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  See http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.  (Last visited March 23, 2010).

[16]A GAF of 50 indicates severe symptoms or any serious impairment in social, occupational or school functioning.  See http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.  (Last visited March 23, 2010).

putting in applications for work, but was not exercising. She also reported taking classes for a degree in Human Resources. Dr. Hammond recommended that Plaintiff continue her medications and see "Dr. Annie" for group therapy. (Tr. 234).

Plaintiff returned to Dr. Hammond on December 12, 2007. Her concentration was okay and memory was intact. Her insight and judgment were poor. Plaintiff reported that she was some better. She also reported applying for jobs, and that she was not being hired because she blacked out at her last job. Her medications were continued. (Tr. 233). Dr. Hammond's last treatment note is dated February 27, 2008. Dr. Hammond diagnosed Plaintiff with major depression, panic disorder with agoraphobia, borderline IQ, obesity, and hypothyroidism, and status post breast reduction, and assigned a GAF of 50. Plaintiff's concentration was good and memory was intact. Her insight was poor, and her judgment was okay. Plaintiff reported that she stays home with her handicapped son, that she assisted her mother following surgery, and that she babysits her step-grandchild. She reported that she is up every two hours to eat and drink. Dr. Hammond recommended that Plaintiff continue her medications, but switch Celexa to Prozac[17] for weight loss. (Tr. 232).

---

[17]Prozac an antidepressant, used to treat major depressive disorder. See, www.drugs.com. Last visited September 4, 2009.

1.    <u>Whether the ALJ erred in finding that
      Plaintiff could return to her past
      relevant work and in failing to fully
      explain his decision.</u>

Plaintiff contends that the ALJ erred by failing to explain his decision as required by Social Security Ruling 82-62: *Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General* ("SSR 82-62"), and by rejecting the opinion of the vocational expert regarding Plaintiff's past relevant work. Plaintiff also asserts that the ALJ erred in failing to discuss a "prior decision of the Social Security Administration personnel" that Plaintiff could not return to her prior work; and that he erred in failing to explain how Plaintiff can perform her past relevant work in light of Dr. Hammond's opinion that Plaintiff has a marked limitation in responding to customary work pressures.

Defendant asserts that Plaintiff's contention that the ALJ failed to develop and explain his decision that Plaintiff could perform her past relevant work is without legal support, as it is the Plaintiff's burden to prove she is not capable of performing her past work and she failed to do so.   Defendant also argues that the record includes detailed descriptions of Plaintiff's past work, provided by Plaintiff, and that the ALJ compared Plaintiff's RFC to those demands in making his determination.

In determining that Plaintiff is not disabled based on her ability to perform past relevant work, the ALJ first set forth

Plaintiff's RFC as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the mental (and
> physical) residual functional capacity to perform
> semiskilled work activities over a wide range of
> exertional levels. Additionally, the undersigned finds
> that the claimant's mental impairment(s) pose only mild
> to minimally moderate limitations in her ability to
> function, however, contact with the general public should
> not be a usual job duty.

(Tr. 21).

In making this determination, the ALJ assigned determinative

weight to the opinion of Dr. Hammond, stating as follows:

> As for the opinion evidence, the undersigned has assigned
> determinative weight to the findings and opinion
> expressed by Dr. Hammond, based on residual functional
> capacity assessments, observations and her medical
> expertise as noted herein. It is important to note that
> a mental residual functional capacity by Dr. Hammond in
> August 2007 estimated that the claimant's deficiencies
> primarily ranged between "none" to "moderate" with only
> her ability to respond appropriately to customary work
> pressures as "marked." . . . On the last date of record,
> February 27, 2008, Dr. Hammond noted that the claimant
> carried a GAF of 50, which in many instances represents
> an individual who has seriously [sic] symptoms; is
> suicidal; and unemployed. Dr. Hammond noted that the
> claimant had done much better when she was working, and
> suggested that the claimant needed to get a job. The
> undersigned recognized that Dr. Hammond has had an
> established relationship with the claimant over the years
> and is qualified to evaluate the claimant's complaint and
> form conclusions regarding her symptoms, diagnosis, and
> resulting limitations. The undersigned also notes that
> Dr. Hammond's, opinion is supported by the findings of
> the State Agency psychologist who, after reviewing the
> record as it existed in November 2005 also determined
> that the claimant retained the residual functional
> capacity for substantial gainful activity. It is
> noteworthy that Counsel argues that Dr. Hammond's office
> notes establish that the claimant has not been

functioning at mental levels that would permit
substantial gainful employment; however it is worth
reiterating that Dr. Hammond opined in her office note
dated March 8, 2007, that the claimant needed to get a
job and not stay home in bed.

(Tr. 24-25).  The ALJ then found Plaintiff capable of performing

her past work as follows:

The claimant is capable to performing past relevant work
as utility worker for the school system.  This work does
not require the performance of work-related activities
precluded by the claimant's residual functional capacity
. . . .  An exception here is that contact with the
general public should not be a primary job duty.  As
such, claimant cannot return to her job as a school bus
driver.

Claimant reported that she worked in many other different
positions while employed with the public school system,
including an office worker, bus inspector helper, and
mechanic helper.  Claimant has a successful work history
from 1985 to 2005.  In comparing the claimant's residual
functional capacity with the physical and mental demands
of this work the undersigned finds that the claimant is
able to perform it as actually performed.  The
undersigned emphasizes the fact that the claimant wanted
disability does not entitle her to disability.  Thus,
there is no need for a vocational expert since claimant
can do her past relevant work.

(Tr. 26).

In this case, Plaintiff asserts that the ALJ determined that

she could return to her past relevant work as a utility worker;

however, the VE did not identify the utility worker as her past

relevant work.  Instead, he listed her past relevant work as a

school bus driver and as a janitor[18].  The undersigned finds that
while the VE did not expressly mention the "utility worker," he did
list two of the jobs, namely the school bus driver and the janitor,
that Plaintiff testified she performed as a utility worker.  During
the administrative hearing, Plaintiff testified that while employed
as a utility worker for the school system, she worked as a janitor
at a high school from 1985 to 1997, and that she drove buses from
1997 until her separation in 2005.  (Tr. 254-255).  According to
Plaintiff, while assigned to the transportation department, she was
sometimes rotated from driving buses to duties such as an office
worker, a mechanic's helper and a an inspector's helper.  (Tr.
257).  The ALJ expressly held that Plaintiff could return to the
utility job, except that she was precluded from driving school
buses.  Because Plaintiff identified the janitorial job as one of
the jobs that she performed for over ten years in her role as a
utility worker, and the VE included it in Plaintiff's past relevant
work, the undersigned finds that implicit in the ALJ's finding that
Plaintiff could return as a utility worker, except for the school
bus driver position, was a finding that she could perform the
janitorial job; thus, the ALJ's finding does not conflict with the

---

[18]The VE stated that "I believe it would best be reflected as
a school bus driver, which would be medium in exertional level
and semi-skilled with an SVP of a 4.  And that of a janitor,
which is also medium in exertional level, and unskilled with an
SVP of 2."

(Tr. 276).

VE's testimony.

Plaintiff relies on Social Security Ruling ("SSR") 82-62[19], 1982 SSR LEXIS 27 to assert that the ALJ failed to explain his decision that Plaintiff could perform her past relevant work.  While SSR 82-62 requires in cases involving a mental or physical impairment that care "be taken to obtain a precise description of the particular job duties" at issue, the ruling only requires that sufficient documentation be obtained "to permit a decision as to the individual's ability to return to such past work."   It is the plaintiff's responsibility to demonstrate an inability to return to her past relevant work. Lucas v. Sullivan, 918 F. 2d 1567 (11th Cir. 1990)

As a threshold matter, Plaintiff has pointed to nothing in the record which indicates any requirements of the janitorial job that she is unable to perform.     Nobles v. Astrue, 2009 U.S. Dist.

---

[19]In determining the requirements of past work, SSR 82-62 states that:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. . . .

> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). . . .

LEXIS 9389 (M.D. Ala. Feb. 5, 2009)(where the claimant failed to
identify any requirements of past relevant work that she was unable
to perform, she did not meet burden of demonstrating an inability
to return to her past relevant work.)  Moreover, the  undersigned
finds that the ALJ adequately explained his determination that
Plaintiff could return to her previous work as a utility worker,
excluding the job of school bus driver.  A review of the record
indicates that the vocational documentation required by SSR 82-62
was provided by Plaintiff herself, in work history reports she
submitted with her applications and in testimony before the ALJ.
(Tr. 73-74, 107, 254-258).  In finding that Plaintiff could return
to her past work, the ALJ correctly referenced that documentation,
and included in his decision a finding of fact as the individual's
RFC.  He also  made the required finding of fact as to the physical
and mental demands of Plaintiff's past work in finding that her
past work "does not require the performance of work-related
activities precluded by the claimant's residual functional
capacity," specifically excluding from that PRW the duties in her
past job as a school bus driver, which clearly acknowledges his
consideration of all the demands of Plaintiff's past work as
utilities worker, including that of a janitor.

     With respect to Plaintiff's assertion that the ALJ erred in
failing to discuss a "prior decision of the Social Security
Administration personnel," it is clear that the ALJ was not

required to do so.  An ALJ does not have to refer to each and every piece of evidence in his decision so long as it is supported by substantial evidence.  See, e.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  In this case, there is every indication that the ALJ's determination that Plaintiff can return to her past work is supported by substantial evidence.  The fact that he did not specifically address an opinion expressed in a Vocational Rehabilitation form in making that determination is of no matter.

Finally, Plaintiff argues that the ALJ erred in failing to explain how he assigned determinative weight to Dr. Hammond's opinion, which includes a finding that Plaintiff is markedly limited in her ability to respond to customary work pressures, yet also found that Plaintiff can return to her prior work.  The ALJ assigned "determinative" weight not just to the Mental Residual Functional Capacity completed by Dr. Hammond, but also to "the findings and opinion expressed by Dr. Hammond, based on residual functional capacity assessments, observations and her medical expertise." (Tr. 24). It is abundantly clear from a review of the record that Dr. Hammond is of the opinion that Plaintiff not only can return to work, but that she should do so.  In treatment notes dated December 4, 2006, Dr. Hammond stated that she had last seen Plaintiff in 2003, when she had done well in therapy and was coping well, but that Plaintiff had not done as well since she stopped therapy and changed medications.  (Tr. 195).  In March 2007 treatment notes, Dr. Hammond observed that Plaintiff was not taking

26

responsibility for her life, and that she needed a job, or regular activity. She recommended that Plaintiff get a job and see a therapist. (Tr. 237). Two months later, in May 2007, Dr. Hammond noted that Plaintiff was doing better since being told that she had to take responsibility for herself.(Tr. 236).

In August 2007, Dr. Hammond completed the Mental Residual Functional Capacity, wherein she assigned Plaintiff a marked limitation in her ability to respond to customary work pressures. Contrary to Plaintiff's position that this finding deems Plaintiff unable to return to her previous work, such is not the case. Dr. Hammond also opined that Plaintiff had only moderate limitations in her ability to complete work-related activities in a normal workday or workweek, mild limitations in her ability to respond appropriately to co-workers, and no restrictions in her activities of daily living and no difficulty in social functioning. It is also noteworthy that Dr. Hammond opined that these limitations had not lasted 12 months and were not expected to last 12 months. (Tr. 222-223).

The ALJ complied with the requirements of SSR 82-62 by correctly determining that Plaintiff retains the RFC to meet the physical and mental demands of her past work. He reviewed the information Plaintiff presented to the Social Security Administration about the demands of her past work during her applications process and her testimony about the demands of that

work, and found that Plaintiff's RFC would permit her to return to her past work.  He clearly stated that her RFC would allow her to return to her job as a utility worker, except she could not drive a school bus.  Accordingly, substantial weight supports the ALJ's decision.

> ## 2.   Whether the ALJ erred in failing to assign controlling weight, or any weight, to the opinion of Plaintiff's treating physician, Dr. Charla Evans, M.D.

Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinion of Dr. Evans regarding Plaintiff's inability to stand or walk more than one hour in an eight hour day and the necessity that she frequently elevate her legs while sitting.  According to Plaintiff, because Dr. Evans was Plaintiff's treating physician, her opinion is entitled to controlling weight pursuant to Social Security Ruling 96-5p: *Titles II and XVI: Giving Controlling Weight to Treating Medical Source Opinions* ("SSR 96-2p") and 20 CFR § 404.1527(d).  Defendant responds that the ALJ considered all the medical opinions and rejected the opinion of Dr. Evans because it was inconsistent with her own treatment notes and was conclusory.

In considering the opinion of Dr. Evans, the ALJ stated that:

> [N]o weight has been assigned to Dr. Charla Evans, who in August 2006 assigned mental ratings that indicated the claimant was incapable of functioning at acceptable levels secondary to a mental disorder(s). . . . First, the physician noted that she is not a psychiatrist. Second, Dr. Evans' records for the most part, are

conclusory and are not supported by the overall objective medical evidence.  Third, her opinion is contradicted by her own office notes. . . . Last, Dr. Evans' opinion is undermined by credible substantial evidence and claimant's admission of her activities of daily living. Additionally, at the hearing, claimant testified she had not seen Dr. Evans for approximately one year. . .

(Tr. 25).  As noted supra, the ALJ's decision not to accord Dr. Evans's opinion any weight is not error.  It is well settled that "[t]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). See, e.g., Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159-1160 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); 20 C.F.R. § 404.1527(d)(2).  "[G]ood cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-1241 (citing to Lewis, 125 F.3d at 1440). See also Edwards v. Sullivan, 937 F.2d 580 (11th Cir. 1991) (holding that the ALJ properly discounted a treating physician's report where the physician was unsure of the accuracy of his findings and statements).  If the ALJ disregards or accords less weight to the opinion of a treating physician, the ALJ must clearly articulate his reasons, and the failure to do so is

reversible error.  <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986).

A review of the record reflects that Dr. Evans's opinion was not bolstered by the evidence, was conclusory, and was inconsistent with her medical records.  In fact, Dr. Evans's Physical Capacities Evaluation is also internally inconsistent.  She states Plaintiff cannot sit/stand/walk at all, but then opines that she can sit for two hours total and stand/walk one hour total in an eight-hour workday.  Dr. Evans's opinion also conflicts with her treatment notes and with other medical records.  In August 2005, she diagnosed Plaintiff with major depression and panic disorder stating that her condition should improve in three to four months, but in August 2006, she stated the her limitations stemming from her mental disorder had lasted for 12 months, or was expected to last for 12 months. Dr. Hammond opined that her mental limitations had not lasted 12 months, and could not be expected to last 12 months.  Additionally, Dr. Evans opined that Plaintiff must elevate her feet when sitting, but nowhere in her treatment records, or in the opinions of any other medical source, has she been instructed to elevate her feet when sitting.  Finally, while Dr. Evans limits Plaintiff to no fine manipulation, nowhere in her treatment records, or those of any other medical source, are limitations placed on Plaintiff's ability to do fine manipulation.  Based upon the record evidence, the undersigned finds that the ALJ did not err

in assigning no weight to the opinion of Dr. Evans, in that her opinion is inconsistent with the record as a whole, is inconsistent with her own medical records, and is not bolstered by the evidence as a whole.

    **3.**    **Whether the ALJ erred by failing to perform a function-by-function analysis of Plaintiff's limitations in assessing her RFC in exertional terms.**

Plaintiff argues that the ALJ erred in failing to perform a function-by-function analysis of Plaintiff's limitations in assessing her RFC in exertional terms, as required by 20 C.F.R. §§ 404.1521(b)(1) and SSR 96-8p.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis . . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184 (S.S.A. 1996). In Green v. SSA, 223 Fed. Appx. 915, 2007 U.S. App. LEXIS 10121 (11th Cir. 2007), the Eleventh Circuit addressed a plaintiff's claim that the ALJ had erred in determining her RFC because he discredited her doctor's assessment and in the absence of the doctor's assessment, there was purportedly nothing in the record to support the ALJ's RFC conclusion. In rejecting the plaintiff's claim, the Court found that:

> [o]nce the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [the claimant]'s limitations,

> the only documentary evidence that remained was the
> office visit records from Dr. Bryant and Dr. Ross that
> indicated that she was managing her respiration problems
> well, that she had controlled her hypertension, and that
> her pain could be treated with over the counter
> medication.   Thus, substantial evidence supports the
> ALJ's determination that [the claimant] could perform
> light work.

(Id. at 924.)   See also Freeman v. Barnhart, 220 Fed. Appx. 957;

2007 U.S. App. LEXIS 6878 (11th Cir. 2007).

A review of the record indicates that there are very few

treatment notes related to physical limitations, and that the one

record that includes an opinion of Plaintiff's exertional

limitations is that of Dr. Evans, in a Physical Residual Functional

Capacity dated August 11, 2006.   In setting forth his finding of

Plaintiff's RFC, the ALJ stated that:

> [N]o weight has been assigned to Dr. Charla Evans, who in
> August 2006 assigned mental ratings that indicated the
> claimant was incapable of functioning at acceptable
> levels secondary to a mental disorder(s) . . . .  First,
> the physician noted that she is not a psychiatrist.
> Second, Dr. Evans' records for the most part, are
> conclusory and are not supported by the overall objective
> medical evidence.   Third, her opinion is contradicted by
> her own office notes . . . .  Last, Dr. Evans' opinion is
> undermined by credible substantial evidence and
> claimant's admission of her activities of daily living.
> Additionally, at the hearing, claimant testified she had
> not seen Dr. Evans for approximately one year, after the
> physician left her group practice.

(Tr. 25).  Absent this opinion, which the ALJ correctly rejected,

the medical evidence falls far short of any indication that

Plaintiff experienced exertional limitations that would impact her

ability to perform work at any exertional level.   For example, Dr.

Rutland noted that Plaintiff ambulated briskly, and got on and off the exam table without help.  He also noted that Plaintiff's straight leg raising was negative bilaterally, and she had 5/5 strength bilaterally in the upper and lower extremities in all major muscle groups.  Plaintiff's sensory exam was normal, and her reflexes were 2+ and symmetric in bilateral upper and lower extremities.  While Dr. Rutland diagnosed Plaintiff with anxiety and depression, hypertension and arthritis of her cervical spine, he did not place any limitations on Plaintiff's ability to perform any physical activities, and noted that the majority of Plaintiff's limitations appeared to be psychiatric.  (Tr. 148-152).

Likewise, the treatment notes from Northside Clinic document Plaintiff's complaints of low back pain, but there is no indication that she experiences any physical limitations.  (Tr. 207-210).  In addition, Dr. Newman completed a form in November 2006 wherein he opines that Plaintiff's work restrictions are related to her panic disorder, anxiety, and major depression, but he does not mention any physical impairments.  (Tr. 289-290).  Finally, in January and February 2007 treatment notes, Dr. Jimenez reports a normal physical exam except for an ulcer on Plaintiff's tongue.  (Tr. 217).

Accordingly, while the ALJ could have been more specific and explicit in his findings, a review of the record reflects that he

complied with 96-8p by discussing Plaintiff's lack of functional limitations and then proceeding to find that she was able to perform at all exertional levels. *See* <u>Freeman v. Barnhart</u>, 220 Fed. Appx. 957, 2007 U.S. App. LEXIS 6878 (llth Cir. 2007). Thus, the ALJ's finding that the medical records did not demonstrate physical limitations that would preclude Plaintiff's ability to perform unskilled work at all exertion levels is supported by substantial evidence.

In addition to the medical evidence, the ALJ pointed to the wide range of daily activities Plaintiff reported just after filing her application for benefits, such as housecleaning, cooking, doing laundry, using a computer, taking classes online, caring for a special-needs son and post-surgery parent simultaneously, babysitting a grand baby and going fishing. Moreover, as noted supra, the VE identified Plaintiff's janitorial job as being at the medium level of exertion, and the record is devoid of any plausible evidence which demonstrates that Plaintiff cannot perform work at that level.  Thus, Plaintiff has not established that the ALJ erred in establishing her RFC.

**4.  <u>Whether the ALJ erred by failing to consider the impact of Plaintiff's morbid obesity on her residual functional capacity</u>.**

Plaintiff argues that the ALJ erred in failing to discuss Plaintiff's obesity or its impact on her ability to perform basic

work activities.   Defendant argues that Plaintiff properly considered Plaintiff's obesity in determining her RFC, as required by Social Security Ruling 02-1p: *Titles II and XVI: Evaluation of Obesity* ("SSR 02-1p"), and that Plaintiff has failed to point to evidence of a significant impact on Plaintiff's ability to perform a basic work activity resulting from her obesity.

SSR 02-1p requires that the ALJ consider the effects of obesity at steps three and four when combined with other impairments.   In assigning Plaintiff an RFC, the ALJ considered Plaintiff's obesity as follows:

> Moreover, while the obesity listing has been eliminated, there is evidence that the claimant was obese prior to her alleged onset of disability.   Therefore, her obesity has been a longstanding problem with which she has successfully worked in the past without significant difficulty.   The assessment by Dr. Hammond revealed that claimant was morbidly obese, but was not exercising; was not eating healthy; and wanted disability.

(Tr. 26).   As a threshold matter, it is clear that the ALJ considered Plaintiff's obesity in determining her RFC.   20 C.F.R. §§ 405.1545(a)(2) and 416.945(a)(2) provide that an ALJ will consider even medically determinable impairments that are not severe in assessing a Plaintiff's RFC.   In this case, Plaintiff did not allege obesity as an impairment in her application for benefits, and did not testify that she experienced any limitations as a result of obesity.   Additionally, none of Plaintiff's physicians identified any functional limitations resulting from her

obesity.   Notwithstanding this lack of record evidence, the ALJ properly considered Plaintiff's obesity, in conjunction with her other impairments, in determining her RFC.

### 5.   **Whether the ALJ erred by finding that Plaintiff's hypertension, cervical arthritis, obesity and edema are not severe impairments.**

Plaintiff argues that her hypertension, cervical arthritis, obesity and edema are severe impairments in that they significantly limit her ability to do basic work activities.   According to Plaintiff, the medical record documents a longitudinal history of treatment for these impairments.   Defendant argues that the record does not support a finding that these impairments are severe within the meaning of the Act, and that Plaintiff failed to meet her burden of showing that they had more than a minimal effect on her ability to do basic work activities.

In finding that these impairments are not severe, the ALJ stated the following:

> The evidence also documents treatment for high blood pressure, however, this condition has not been determined to be a disabling impairment per treating physician at Exhibit 19F. . . .
>
> [C]laimant alleges that hip pain limits her capacity to work, however, it has not been found that this impairment causes more than minimal limitation in her ability to perform basic work activities.   Consequently, this impairment cannot be considered severe enough to cause any significant functional restrictions per SSR 96-4p. . . .
>
> A consultative evaluation by Travis Rutland, M.D., on November 19, 2005, concluded that the majority of the claimant's

36

limitations appeared to be of a psychiatric nature, however, he acknowledged an additional diagnosis of hypertension. . . .

[T]here is evidence that the claimant was obese prior to her alleged onset of disability.  Therefore, her obesity has been a longstanding problem with which she has successfully worked in the past without significant difficulty.

(Tr. 19, 20, 22, 26).

At the second step of the sequential evaluation process, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii).  A "severe" impairment is one which "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520 ©.  The Eleventh Circuit has held that a claimant's impairment may be considered "not severe" only if it is a slight abnormality which has such a minimal effect on he or she [sic], that it is not expected to interfere with the ability to work, regardless of age, education or work experience.  See, e.g., Brady v. Heckler, 724 F.2d 914, 922 (11th Cir. 1984).  In McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986), the Eleventh Circuit clarified the severity determination:

> [a]t step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be either severe or not severe.  Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

37

Id. at 1031.   If an impairment causes only mild effects on a claimant's ability to work, or is amenable to medical treatment, it may be not severe.   See Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987).   Thus, a claimant bears the burden of proving that an impairment is severe and more than a mere slight abnormality. Brady, 724 F.2d at 920.[20]

In this case, Plaintiff has failed to carry her burden of showing that her hypertension, cervical arthritis, obesity and edema significantly limit her ability to do basic work activities. It is noted at the outset that Plaintiff did not allege any of these impairments, other than hypertension, as the basis for her disability when she initially filed her application for benefits. (Tr. 72).   It is further noted that Plaintiff testified that she was unable to work due to edema, panic and anxiety attacks and depression, without any mention of hypertension, cervical arthritis or obesity.   (Tr. 260).

Additionally, the medical record does not support her argument that these impairments result in more than a slight abnormality. For example, Dr. Rutland stated in November 2005 that Plaintiff was mildly obese, but noted that she ambulated "briskly" and that she needed no assistance getting on and off the examination table.

---

[20]See also SSR 96-3p Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment Is Severe,1996 WL 374181, *1-2.

While he diagnosed Plaintiff with arthritis of her cervical spine, he noted that the majority of her limitations appeared to be psychiatric. (Tr. 148-152). In December 2005, Dr. Evans diagnosed Plaintiff with osteoarthritis in her neck and hypertension, but did not indicate that Plaintiff is limited by either. (Tr. 161-162). In the next treatment note, in April 2006, Plaintiff complained only of low back pain, and Dr. Evans does not even list hypertension, cervical arthritis, obesity or edema as diagnoses, much less indicate any limitations attributed to those impairments. (Tr. 159-160). In fact, except for a diagnosis of obesity in June 2006, and diagnoses of obesity and hypertension in October 2006, Dr. Evans's treatment notes through November 2006 neither list hypertension, cervical arthritis, obesity or edema as diagnoses, nor assign any restrictions attributable to those impairments. (Tr. 153-158, 207-212).

Based upon the record evidence, the undersigned finds that Plaintiff has failed to show that her hypertension, cervical arthritis, obesity or edema significantly limit her ability to do basic work activities. Accordingly, the ALJ's failure to find these impairments severe is not error, and substantial evidence supports his decision.

## V.   Conclusion

For the reasons set forth, and upon careful consideration of

the administrative record, oral arguments, and memoranda of the

parties, it is ordered that the decision of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance

benefits, is due to be **AFFIRMED.**

      **DONE** this **22ND day of March, 2010.**

                          **/s/SONJA F. BIVINS**
                   **UNITED STATES MAGISTRATE JUDGE**